HOTEL & RESTAURANT EMPLOYEES' UNION, LOCAL NO. 556-C, AFFILIATED WITH AMERICAN FEDERATION OF LABOR, v. PETER TZAKIS, INDIVIDUALLY AND *d. b. a.* MODERN LUNCH BAR AND CAFE.[1]

August 6, 1948.

No. 34,771.

<hr />

[1]Reported in 33 N. W. (2d) 859.

*Robins, Davis & Lyons,* for appellant.

*Smith & Smith* and, on petition for reargument, *Dorsey, Colman, Barker, Scott & Barber,* for respondent.

FRANK T. GALLAGHER, JUSTICE.

Appeal from an order denying plaintiff's motion for a temporary injunction.

Plaintiff is an unincorporated voluntary association of employes affiliated with the American Federation of Labor. Defendant is the owner of a bar and restaurant business in Faribault, Minnesota. On September 23, 1947, plaintiff, through its business representative, Leonard Johnson, entered into an agreement with defendant, the effect of which would have been to make defendant's place of business a union shop had the terms of the agreement been carried out by defendant.

It is undisputed that defendant breached the agreement by failure to discharge employes who did not join plaintiff, by failure to pay union wage rates, and in several other material respects.

Defendant concedes that injunction may lie to restrain the breach of a collective bargaining agreement by an employer. He contends, however, that the agreement herein concerned was not a collective bargaining agreement, that plaintiff was never the actual bargaining representative of defendant's employes, and that there has been no showing of irreparable damage as distinguished from a mere allegation thereof.

The question involved, as raised by plaintiff in its brief, is as follows: Is a labor union entitled to injunctive relief because of violation by an employer of his collective bargaining agreement with such union?

■ It is our opinion that either a labor union or an employer is entitled to injunctive relief under proper circumstances where there is a violation of a collective bargaining agreement by either of the parties to the contract. If this right was denied under proper circumstances, it would seriously impair the rights of collective bargaining. This view appears to have been well stated in Ribner v. Racso Butter & Egg Co. Inc. 135 Misc. 616, 620, 238 N. Y. S. 132, 136, where the court said:

"* * * It is well settled that an employer may avail himself of the relief afforded by a court of equity to enforce his rights under such a contract with a labor union. Conversely, the union should be afforded reciprocal relief to enforce its rights under the contract with the employer."

Again, in Schlesinger v. Quinto, 201 App. Div. 487, 498, 194 N. Y. S. 401, 409, the court said:

"* * * The remedies are mutual; the law does not have one rule for the employer and another for the employee. In a court of justice they stand on an exact equality; each case to be decided upon the same principles of law impartially applied to the facts of the case, irrespective of the personality of the litigants."

■ Inasmuch as this is an appeal only from an order denying a motion for an injunction restraining and enjoining defendant, during the pendency of this action, from breaching and violating the terms and provisions of a certain contract made and entered into between plaintiff and defendant on September 23, 1947, we are here considering only whether the trial court abused its discretion in denying the relief sought and whether it erred in refusing to admit certain evidence offered for proof by plaintiff.

It is conceded by both parties that the granting of an injunction rests largely in the discretion of the trial court. The general law in

this state on this subject may be found in 3 Dunnell, Dig. § 4490, where it is said:

"* * * Within the limits prescribed by the statute, the allowance of a temporary injunction rests largely in judicial discretion, to be exercised with reference to the facts of the particular case, and with regard to the relative injury and inconvenience which may be likely to result to the parties, respectively, from the allowance or disallowance of such relief. The action of a court in this regard will not be reversed on appeal except for a clear abuse of discretion. Granting or refusing a temporary injunction rests so largely in the discretion of the trial court that an appellate court is not justified in interfering unless the action of the trial court is clearly erroneous and will result in an injury which it is the duty of the court to prevent. * * * The supreme court will not interfere with the action of a trial court in granting or refusing a temporary injunction, where the evidence as to the facts is conflicting and no irreparable injury impends. * * * On an appeal from an order refusing an injunction pendente lite, the order must be taken as resolving against the appellant all questions of fact which the evidence leaves in doubt."

In J. F. Quest Foundry Co. v. Int'l M. & F. W. Union, 216 Minn. 436, 440, 13 N. W. (2d) 32, 34, an action for a temporary injunction, this court said:

"* * * To be entitled to such extraordinary relief, plaintiff must bring itself within the well-established rule that the threatened injury must be real, substantial, and irreparable."

See, also, 3 Dunnell, Dig. & Supp. §§ 4470, 4471, and cases cited. Inasmuch as the granting of a temporary injunction rests largely in the discretion of the trial court, this court will not interfere on an appeal from an order granting or refusing a temporary injunction where the evidence as to the facts is conflicting and no irreparable injury impends.

■ From a review of the evidence, our previous decisions might compel us to sustain the order of the trial court on the proof actually

submitted by plaintiff as to the real, substantial, and irreparable injury which plaintiff would have sustained. The evidence shows that at the time of the execution of the contract between the parties on September 23, 1947, defendant had only about six people in his employ. While Leonard Johnson, business representative of plaintiff, testified that he did not claim that on the date of the execution of the contract his union represented a majority of the employes of defendant, he did say that he believed that four of the employes had made out applications to join the union and that by signing those applications the four employes constituted plaintiff as the bargaining agent. The record further shows that although this contract was executed on September 23, 1947, plaintiff did nothing to legally attempt to enforce its provisions until the commencement of this action on April 20, 1948, according to the date of the complaint. Johnson did testify, however, that he consulted with defendant two or three weeks after signing the contract and that at the date of the signing of the contract defendant claimed that he had five or six employes. Johnson further testified that at the time of his first conference with defendant after the signing of the contract he thought that just one of the employes had joined plaintiff union. He said that he approached defendant on the basis that other employes who had not yet joined the union were required to do so and that defendant said that it made no difference to him, as the employes could do as they pleased about it. Johnson also testified that he subsequently contacted defendant on at least two occasions, the last conference being sometime in the month of January 1948. He claimed that in these conferences he approached defendant on the same basis as before and that defendant said it was none of his business what his employes did, that "he wasn't going to see to [sic] whether or not they belong to the union." It further appears from the record that while there was a change in the personnel of defendant's employes between the dates of the execution of the contract on September 23, 1947, and the trial of this action, May 3, 1948, none of defendant's employes had joined the union, with the possible exception of one.

In view of the fact that the trial court issued no memorandum in the matter, we have no way of concluding whether it decided from the testimony adduced by plaintiff that there was not a sufficient showing of real, substantial, and irreparable injury to plaintiff to warrant the issuance of the temporary injunction, but we assume that that was the trial court's conclusion and that it acted within its discretion in doing so. However, in order for the trial court to have all the information before it to determine the question of whether a real, substantial, and irreparable injury would be done plaintiff, we believe that the introduction of additional testimony should have been permitted.

Plaintiff assigns as error, among others, that the trial court erred in sustaining objections to plaintiff's questions put for the purpose of eliciting testimony that all other business establishments, such as that of defendant, at about the same time the agreement of September 23, 1947, was entered into, signed identical contracts and have abided by the same ever since, and in sustaining objections to plaintiff's offers of proof that all other business establishments, such as that of defendant, in the city of Faribault, Minnesota, at about the same time as did defendant, signed identical contracts and have abided by the same.

Plaintiff offered to prove that the contract signed by defendant resulted from negotiations had in the first place between representatives of plaintiff union and an employers' association made up of "on sale" liquor dealers in the city of Faribault, and that the association and employers, on behalf of all the individuals engaged in the same business as defendant, agreed to execute contracts identical with the contract referred to herein. It further offered to prove that defendant signed the agreement of September 23, 1947, pursuant to an understanding that all others in the same business did likewise; that the contracts have been in full force and effect in the industry since their execution; and that all those engaged in the same business as defendant have been complying with the terms of the contract. The trial court sustained objections to this offer on the ground that the evidence was immaterial.

38

Plaintiff argues, but does not concede, that even if none of defendant's employes were members of plaintiff union, or if none of them had designated it as their bargaining representative, it still had a substantial interest in the employment relations between defendant and his employes, since defendant's employment relations affected the working conditions and bargaining power of employes in Faribault in the same occupation in which defendant's employes were engaged. It contends that it was detrimental to the interests of employes of business establishments in Faribault, other than that of defendant, who are members of plaintiff union, to have one place of business, such as that of defendant, which employs nonunion workers who receive wages and are subjected to working conditions below the standards set by the agreement herein considered. It claims that under the circumstances it was not only material to plaintiff, but also vital, that evidence be admitted showing that all establishments in Faribault such as defendant's had executed contracts identical with the one involved in this case, which contracts, it claims, were executed at and about the same time as the agreement with defendant, and that all such other business establishments in Faribault, except defendant, have ever since abided by them. It is plaintiff's position that all employes in a particular trade constitute the appropriate bargaining unit, where it is shown that all employers engaged in the same business have executed identical contracts covering the employes in question. Plaintiff contends that even if representation is material in this case the court erred in restricting the inquiry as to union membership only as to defendant's employes, since it claims that the appropriate unit for collective bargaining purposes consists of all persons doing the same work as that of defendant's employes in all establishments carrying on the same business in Faribault.

It appears to us that, even though the trial court might have believed that there was not a sufficient showing of a threatened real, substantial, and irreparable injury to plaintiff union in the proof submitted to grant the temporary injunction, nevertheless if the testimony offered by plaintiff had been received it might have eluci-

dated certain facts, one way or the other, which would have enabled the trial court to determine the matter on a more comprehensive basis. It appears reasonable to us that if the contract defendant signed was identical with similar contracts signed by other "on sale" liquor dealers engaged in the same business in the same city as defendant, and if the agreement under consideration here was signed by defendant pursuant to an understanding that all others engaged in the same business in Faribault signed similar contracts with plaintiff union, and if it further appeared that all other signers of similar contracts with plaintiff union were complying with the terms and provisions of the contracts, but defendant was not, such testimony should have been admitted to aid the trial court in determining whether plaintiff would sustain a real, substantial, and irreparable injury as a result of defendant's failure to comply. While it is true that the offer of proof did not go to the extent of attempting to show just what real, substantial, and irreparable injury plaintiff would sustain as a result of defendant's failure to comply, we assume that it was made for the purpose of laying a foundation in an attempt to show that if defendant failed to comply with the terms of the contract by employing nonunion help, payment of wages, etc., contrary to the terms and provisions of the contract, plaintiff might suffer real, substantial, and irreparable injury as a result of other signers of similar contracts doing likewise, thereby affecting the rights of all members of plaintiff union in the city of Faribault.

We believe that under the facts and circumstances the evidence as contained in the offer of proof by plaintiff should have been admitted for the purpose of aiding the court more comprehensively in its determination as to whether the temporary restraining order should have been granted or denied.

Reversed with directions that the evidence referred to herein, in the offer of proof, be considered on a retrial of the question as to whether a temporary injunction should be granted or denied.

Mr. Justice Thomas Gallagher took no part in the consideration or decision of this case.