TONY CRNKOVICH v. INDEPENDENT SCHOOL DISTRICT NO. 701, HIBBING.
NORMAN MAKI AND ANOTHER, INTERVENORS.

142 N. W. (2d) 284.

April 15, 1966—No. 39,889.

---

*Charles T. Wangensteen, Tom Wangensteen,* and *Wangensteen & Bangs,* for appellant.

*M. J. Mulvahill* and *Mulvahill & Mulvahill,* for respondent defendant.

*John G. Engberg* and *Helgesen, Peterson, Engberg & Spector,* for respondent intervenors.

NELSON, JUSTICE.

This is an appeal from an order of the district court denying plaintiff's motion for amended findings or a new trial.

The appellant is an honorably discharged veteran of World War II and at the time he brought this action against defendant, Independent School District No. 701, Hibbing, Minnesota, was 47 years of age and had been a carpenter for the preceding 25 years. Defendant has at all times herein mentioned been in charge of the school system in Hibbing. On November 9, 1959, the school district adopted specific rules and regulations for the hiring of personnel. It specified therein 61 different

full- and part-time positions, of which No. 46 was that of carpenter. These regulations specified that a position of temporary employment would be one where a person is "hired for a limited, short-term period of more than 15 working days' duration."

Sam Birkeland had been employed as a full-time carpenter employee by the school district for some 10 years prior to his retirement on September 1, 1963. He was a full-time, salaried employee and was not paid on an hourly wage rate basis.

During 1961 and while Mr. Birkeland was still the full-time carpenter for the school district, it hired plaintiff as a carpenter from June 16 to about September 11, at which time he was released without hearing. Again, in 1962 the school district hired plaintiff as a carpenter from May 14 to September 18, and at the end of that period he was released without any hearing. Once again, the school district hired him in 1963, during which year he began his work as a carpenter on April 8 while Mr. Birkeland was still the regular carpenter employee of the school district. During the month of June 1963 Mr. Birkeland's active employment came to an end due to illness. He was not, however, laid off the payroll until September 1, 1963. Plaintiff continued as a carpenter with the status of an hourly wage earner until January 8, 1964. He was at no time promoted to be a salaried carpenter employee as a successor to Mr. Birkeland.

The school district took no action to fill Birkeland's position as carpenter until November 12, 1963, when it posted the job vacancy. This vacancy was filled by the district's appointing Norman Maki to it January 9, 1964. Plaintiff was relieved of his position on January 8, 1964, without notice or hearing under Minn. St. 197.46 of the Veterans Preference Act. This action for reinstatement, back pay, and other relief followed, Mr. Maki and American Federation of State, County, and Municipal Employees, AFL-CIO, being permitted to intervene.

After a trial to the court, it found plaintiff was a temporary employee and not entitled to the benefits of the Veterans Preference Act. Plaintiff contends here that this was error and claims that because of his veteran's status the school district could not, under the Veterans Preference Act, relieve him of his employment without due cause, notice, and hearing.

The school district, however, contends that plaintiff was never at any time other than a temporary carpenter employee and therefore did not come within the protection of the Veterans Preference Act.

■ In 67 C. J. S., Officers, § 63, the following statement is made:

"Veterans' preference statutes do not apply to employments which are occasional or temporary, as where the services to be performed are of a general character and such as may be from time to time directed by a superior, without being in any manner indicated by the special nature of the employment. So an employment may be excluded from the protection of the statute where a daily wage is paid * * *."

Following this rule, the attorney general has expressed the view that a temporary employee of the Highway Department did not come within the provisions of the Soldiers' Preference Act upon the completion of the work for which he was employed. Opinion Attorney General, No. 85-g, Aug. 23, 1937. More recently, the attorney general expressed the view that "temporary employment does not come within the provisions of the Veterans Preference Act." Opinion Attorney General, No. 85-A, Sept. 23, 1964. In this opinion the attorney general also stated that "[w]hether the proposed employment constitutes temporary or permanent employment is a question of fact for determination by the city council."

Some of the decisions of this court express a similar view although not so definitely. In State ex rel. Lund v. City of Bemidji, 209 Minn. 91, 94, 295 N. W. 514, 516, this court said: "If that employment was continuous *rather than for a fixed period,* it follows that he [employee] could not be removed 'except for incompetency or misconduct shown after a hearing, upon due notice, upon stated charges.'" (Italics supplied.) Again, in State ex rel. Castel v. Village of Chisholm, 173 Minn. 485, 490, 217 N. W. 681, 682, this court said: "That one employed by the village council for a *temporary purpose or for a fixed term* will cease to be an employe of the village without action of the council upon completion of the work he is employed to do, or upon the expiration of the time for which he is hired, is not here disputed." (Italics supplied.)

■ Reverting again to the facts in the instant case, it appears that

the school district was in the habit of taking on extra carpenters during the summer months and because of this policy plaintiff was hired and worked as a carpenter for certain periods in 1961, 1962, and 1963. He was relieved from his temporary employment in September 1961 and in September 1962 after working for 3 or 4 months during the summer periods of those years. There is nothing in the record to indicate that plaintiff objected to the termination of his employment without notice or hearing in those years. This being true, the trial court could well reach the conclusion that his employment was only temporary in nature. Plaintiff was paid on an hourly wage scale while the full-time carpenter for the school district, Mr. Birkeland, received a salary payable monthly. There was no change of plaintiff's hourly pay rate after Mr. Birkeland's retirement in September 1963. He was paid the same rate, $3.59 per hour, in January 1964 as he was paid when the school district placed him on the payroll in April 1963.

Three letters written by the school district's assistant business manager during 1963 put plaintiff on notice of the temporary nature of his employment. One, dated May 1, 1963, notified plaintiff that he was temporarily employed as of April 8, that his employment was indefinite, and that it was to last for no more than 90 days. In July the district requested intervenor union to permit an extension of plaintiff's employment for not more than 90 days and, upon the extension's being granted, wrote a letter so stating to plaintiff. In October the district obtained a further extension of 30 days. It is significant that plaintiff signed statements indicating that he agreed to work under the conditions of temporary employment specified in the extensions. Also introduced into evidence was a letter written by intervenor union which indicates that the last extension, which was for 30 days, was authorized in order to provide the school with the services of a carpenter while the regular carpenter job was being posted for the purpose of being permanently filled pursuant to the rules and regulations under which the district employed noncontract employees.

The foregoing correspondence appears to be totally consistent with the school district's claim that plaintiff's employment was temporary at all times. The record of plaintiff's workdays also indicates the sporadic,

intermittent, and temporary nature of plaintiff's employment. While no single factor among those previously mentioned might absolutely demonstrate that plaintiff's employment was temporary, nevertheless, when we take into consideration all the facts showing a definite course of conduct, it seems clear that the trial court could find, as it did in the instant case, that his employment was never other than temporary. It is a well-settled rule in this state that where reasonable minds might reach different conclusions upon the facts, an appellate court cannot disturb the findings of the trier of the facts, the reviewing court being obliged to consider the evidence in the light most favorable to the findings. See 1 Dunnell, Dig. (3 ed.) § 411, where it is stated that the trial court is the finder of the facts and conflicts in the evidence are to be resolved in that court, and that the question for the appellate court is whether the evidence as a whole reasonably tends to support the findings, and if so supported, they should not be disturbed.

The findings and conclusions of the trial court find ample support in the evidence that plaintiff's employment by the school district was limited to temporary employment. We therefore conclude that the employment, based upon the particular facts herein, does not come within the operation of the Veterans Preference Act. The decision of the court below must accordingly be affirmed.

Affirmed.

ROGOSHESKE, JUSTICE (concurring specially).

I concur in the result.

However, I do not agree that the protection against arbitrary dismissal afforded by the Veterans Preference Act is inapplicable to a veteran who is employed temporarily for an indefinite term. Notwithstanding any rules or regulations adopted by respondent, that act affords protection to all employees covered[1] except to those whose employment

---

[1] Unlike the civil service laws and regulations covering state employees, which distinguish between a "permanent employee" and one whose employment is provisional or temporary (see, Minn. St. 43.24, 43.20, 43.21), the Veterans Preference Act makes no such distinction. It reads in pertinent part (Minn. St. 197.46): "No person holding a position by appointment or employment in the state of Minnesota or in the several counties, cities, towns,

is for a fixed term or for the performance of a specific, limited task.[2] In such cases, the employment status ceases upon expiration of the term or completion of the task for which the employee was hired. If he is dismissed prior thereto, it must be for cause, upon notice, and after hearing. If his employment is neither fixed as to time nor for a specific task, but is indefinite, the long-established policy protects the employee-veteran from arbitrary removal.

Here, the employee was hired for fixed terms. Although the nature of plaintiff's employment was indeed temporary in the sense that it was not permanent, with its duration subject to the employer's sole control, the successive agreements between the parties never deviated from a fixed short-term period of not to exceed a specified number of days. Absent an agreement, express or implied, to change his status into one for an indefinite term or one replacing the regular carpenter who had retired, the mere fact that plaintiff continued working beyond the term fixed would not ripen into employment for an indefinite term. I suggest that the trial court determined as a fact, upon sufficient evidence, that the employee's status was unchanged, even though the words "temporary employee" are used to describe his status. In my opinion, the use of that designation in public employment can be misleading in the application of civil service laws and regulations.

---

villages, school districts and all other political subdivisions or agencies thereof, who is an honorably discharged veteran, shall be removed from such position or employment except for incompetency or misconduct shown after a hearing, upon due notice, upon stated charges, in writing."

[2] State ex rel. Castel v. Village of Chisholm, 173 Minn. 485, 217 N. W. 681.