MINNEAPOLIS FEDERATION OF TEACHERS, LOCAL 59, AFL-CIO, v. PETER OBERMEYER AND OTHERS. BOARD OF EDUCATION OF SPECIAL SCHOOL DISTRICT NO. 1 v. MINNEAPOLIS FEDERATION OF TEACHERS, LOCAL 59, AFL-CIO.

144 N. W. (2d) 789.

August 22, 1966—Nos. 40,477, 40,478.

*Howard, Peterson, LeFevere, Lefler & Hamilton, Joseph E. Hamilton, Rick J. Carlson, Sanborn, Jackson & Rice,* and *William E. Holcomb,* for appellant.

*Sigal, Savelkoul, Cohen & Sween* and *Samuel I. Sigal,* for respondent federation.

OTIS, JUSTICE.

The question here presented is whether the state labor conciliator may conduct hearings for the purpose of establishing an appropriate bargaining unit to represent teachers in their negotiations with the Minneapolis School Board, pending an appeal from a decision of the district court holding unconstitutional a statute which prevents him from proceeding as he intends to do.

Minn. St. 179.52, subds. 4 and 5, governing the rights of public employees in their labor relations with their employers, establishes the machinery and procedures under which the labor conciliator is authorized to specify bargaining units and determine, after an election, the proper representatives to negotiate conditions of employment. Section 179.572 provides that these sections of the Public Employees Labor Relations Act shall not apply to public school teachers.

Two actions are here consolidated. One has been brought by Minneapolis Federation of Teachers, Local 59, AFL-CIO, hereinafter called the "Federation," claiming § 179.572 is unconstitutional and seeking a mandatory injunction requiring the labor conciliator to specify a unit and determine representation for negotiating with the Minneapolis School Board. The other action has been brought by the school board to secure a declaratory judgment fixing the rights and obligations of the parties affected by the act. The City of Minneapolis Education Association, hereinafter called the "Association," is a rival teachers organization which has been joined as a party defendant in both actions. The trial court held § 179.572 unconstitutional and severable but otherwise denied affirmative relief. The Association appealed to this court on July 13, 1966.

Because of the important constitutional issues which have been raised and the unusual interest which the public has in securing a prompt decision, oral arguments on appeal have been advanced to October 3, 1966. Meanwhile, however, at the request of the Federation, the labor conciliator has scheduled a hearing "for the purpose of gathering pertinent evidence and testimony concerning the establishment of an appropriate representation unit." On the motion of the Association a temporary stay of the proceedings to be held before the conciliator

has been granted. The question here is whether the stay should be extended until a decision on the merits has been rendered by this court.

The Association has furnished a cost bond pursuant to § 605.10 which it contends stays "proceedings in the court below" under the provisions of § 605.115, subd. 6. The Federation takes the position that the proceedings before the conciliator are collateral to the judgment and unaffected by it, even if a cost bond were held to be sufficient to prevent the judgment from taking effect pending the appeal. However, we do not find it necessary to resolve that issue at this time. Under the discretionary power inherent in this court as codified in §§ 480.04 and 480.05 and Rule 62.05,[1] Rules of Civil Procedure, we hold that the interests of justice require that the labor conciliator refrain from taking further action in this matter until the issues presented on the appeal have been heard and decided.

While the Federation readily concedes that this court has the power to stay proceedings, it vigorously asserts that to do so would overrule precedent and deviate from established judicial policy as enunciated in J. F. Quest Foundry Co. v. International M. & F. W. Union, 216 Minn. 436, 13 N. W. (2d) 32. We do not agree. In the Quest case it was an employer who sought to restrain the conciliator from proceeding with an election to determine whether the CIO or AFL should represent the employees for collective bargaining purposes. There the employer already had a contract with the CIO and complained that it was unfair labor practice to call an election which might abrogate it. We held that no real, substantial, and irreparable injury was threatened. The calling of an election did not command the employer "to do or refrain from doing anything." The outcome of the election, we said, was speculative and might favor the CIO, in which case no injury would result. The con-

---

[1] Rule 62.05, Rules of Civil Procedure, provides as follows: "Power of Appellate Court Not Limited. The provisions in this rule do not limit any power of an appellate court or of a judge or justice thereof to stay proceedings during the pendency of an appeal or to suspend, modify, restore, or grant an injunction during the pendency of an appeal or to make any order appropriate to preserve the *status quo* or the effectiveness of the judgment subsequently to be entered."

ciliator's jurisdiction was not in issue. Here it is. In Quest the employer was an interested but passive party. Here the Association must actively and vigorously respond to the conciliator's notice by marshaling evidence and campaigning energetically in a highly partisan contest for representation. The Quest case involved relatively few employees. Here nearly 3,200 employees of the school board are immediately involved and another 37,000 teachers throughout Minnesota only somewhat less directly affected. Minneapolis has 99 public schools attended by 72,000 children, the cost of whose education is $44,000,000 annually. If the conciliator is permitted to proceed with his investigation and election, members of the Federation and the Association may needlessly and futilely be distracted from their professional responsibilities in an expensive and time-consuming competition for support. Whatever the outcome of the proceedings before the conciliator might be, it is almost certain that further review would be sought by certiorari.

If § 179.572 is ultimately held to be valid, the efforts of these parties and others similarly situated, as well as the resources of the conciliator's office, will have been expended in vain.

On the other hand, if the statute is found to be unconstitutional and the trial court is sustained, the only serious consequence is the deferment for about 90 days of the right to bargain collectively at a time when it is probable most contracts for the coming year have already been entered. No other significant prejudice has been called to our attention except the tactical advantage or disadvantage which may inure to one side or the other as a result of the delay.

It is questionable whether our failure to further restrain the conciliator would result in an injury which is literally "irreparable." There is, however, a very great likelihood such injury might be "real and substantial." Having advanced the case on the calendar in order to render a prompt decision, we are of the opinion that the potential harm which might result from revoking the stay far outweighs that which is likely if it is now extended until a decision on the merits has been handed down. Accordingly, in conformity with the conclusions we here reach, the conciliator will refrain from proceeding further in the matter.

Stay of proceedings extended.

50

THOMAS GALLAGHER, JUSTICE (dissenting).

Minn. St. 605.115, subd. 6, provides that in cases not specified in its subds. 2 through 5 (which are conceded not to be applicable here) the giving of the bond specified in § 605.10, subd. 6, *shall stay proceedings in the court below*. The bond provided for in § 605.10 is a $250 cost bond conditioned that appellant pay any costs and charges awarded against him on the appeal.

It is well settled that such a bond (which was filed here) does not vacate or annul the judgment from which the appeal is taken. The latter remains in full force and is res judicata unless modified by this court on the appeal. Pending the appeal the jurisdiction of the trial court is suspended as to matters involved in the appeal, but not as to matters independent of or supplemental to the appeal, or collateral to the proceedings in which the order or judgment appealed from was rendered. State v. Barnes, 249 Minn. 301, 81 N. W. (2d) 864; State ex rel. Spratt v. Spratt, 150 Minn. 5, 184 N. W. 31; West v. Manemann (8 Cir.) 144 F. (2d) 905.

Under the foregoing rule, which seems clear enough, it is my judgment that the cost bond filed here should not serve to stay or restrain the proceedings presently inaugurated by the state labor conciliator. As noted in the majority opinion the labor conciliator's notice dated July 5, 1966, scheduled a hearing on July 21 and 22, 1966, "for the purpose of gathering pertinent evidence and testimony concerning the establishment of an appropriate representation unit." It is to be noted that there is nothing in such notice which indicates that the hearing is called for the purpose of determining a representation election date, or that any such procedure is contemplated prior to the decision of this court on appeal.

I fail to see how a hearing for the purpose set forth in the notice would in any way affect the judgment from which this appeal is taken, or in fact how such a hearing in any way relates to "proceedings in the court below" to authorize a stay as specified in § 605.115, subd. 6. Clearly, proceedings contemplated by the labor conciliator are entirely independent of the lower court proceedings and are not directly involved therein. Nor can I see where the proposed action of the con-

ciliator would in any way jeopardize the position of appellant in this appeal or that a substantial or irreparable injury is threatened them if the conciliator proceeds with the contemplated hearing.

The same conclusion was reached by this court in J. F. Quest Foundry Co. v. International M. & F. W. Union, 216 Minn. 436, 13 N. W. (2d) 32, where it denied an application for temporary injunction enjoining the labor conciliator from proceeding with an election pending appeal. There the court stated (216 Minn. 441, 13 N. W. [2d] 35):

"* * * The purpose of injunctive process is not to allay a litigant's fears or apprehensions. 3 Dunnell, Dig. & Supp. § 4470; Eastman v. United States (D. C.) 31 F. Supp. 754; Redlands Foothill Groves v. Jacobs (D. C.) 30 F. Supp. 995; Burlington Mills Corp. v. Textile Workers Union (D. C.) 44 F. Supp. 699. The direction of an election is not a final order. It is but an intermediate step in a pending and undetermined investigation. N. L. R. Board v. Falk Corp. 308 U. S. 453, 60 S. Ct. 307, 84 L. ed. 396. The calling of an election does not command plaintiff to do or refrain from doing anything. It does not affect in any way the status of the contract, nor determine any right or obligation thereunder. It merely sets in motion the machinery prescribed by law for the ascertainment of a fact. In passing upon this question in Associated Press v. Herrick (D. C.) 13 F. Supp. 897, 900, the court said:

" 'Certification by the board of the names of representatives selected by the complainant's employees will constitute no more than a mere finding of fact without mandatory effect. * * * A finding of fact in itself is no basis for injunctive relief. United States v. Los Angeles & Salt Lake R. Co., 273 U. S. 299, 47 S. Ct. 413, 71 L. Ed. 651.'

"* * * In the instant case, the conciliator, at the request of plaintiff, conducted an investigation and proceeded only so far, when restrained, as to give notice of the election. It cannot be said with certainty at this time what the results of such an election would be. It is possible that it might be determined that the C. I. O. Union continue as the exclusive bargaining agent of plaintiff's employes, since a major-

ity of them are still members of that union. In any event, it is purely speculative now to determine that the results would be such as to constitute irremediable damage to plaintiff. Injunctive relief cannot be given for what is a mere assumption of a possible result. Burlington Mills Corp. v. Textile Workers Union (D. C.) 44 F. Supp. 699, *supra*. Some irremediable damage must be shown to establish a case for equitable relief. 3 Dunnell, Dig. & Supp. § 4471; Heller Bros. Co. v. Lind, 66 App. D. C. 306, 86 F. (2d) 862, and cases there cited."

See, also, Hotel & Restaurant Employees' Union v. Tzakis, 227 Minn. 32, 33 N. W. (2d) 859; Local 597 State Capitol Employees v. Quigley, 269 Minn. 261, 130 N. W. (2d) 489; Thomas v. Ramberg, 240 Minn. 1, 60 N. W. (2d) 18.

Our prior decisions have uniformly held that an administrative action which does not threaten irreparable injury to an appellant cannot be enjoined pending appeal, and this is true, even though the decision from which the appeal is taken is attacked on constitutional grounds.

On the basis of such decisions and on the facts here, I feel that a stay or restraining order is not warranted at this time.